## COMMONWEALTH *vs.* LOUIS K. PALMER.

Suffolk. March 18, 1881; January 4. — March 2, 1883.

Under the St. of 1867, *c.* 130, § 1, requiring the owner or keeper of a dog to cause it to be registered and licensed for one year "in the office of the clerk of the city or town wherein said dog is kept," and § 5, providing that "a license from the clerk of any city or town shall be valid in any part of the Commonwealth, and may be transferred with the dog licensed, provided said license be recorded by the clerk of the city or town where such dog is kept," if the keeping of a dog is transferred from the city or town in which it is registered and licensed, the license must be recorded in the city or town where, after such transfer, the dog is kept.

If the owner of a dog takes it to a town other than that in which it is registered and licensed, and keeps it there for four months, although he goes there for no definite period and with the intention only of remaining there temporarily for rest and recreation, and leaves his home ready for occupancy upon his return, and comes to the place in which it is situated every day to his business, the dog is "kept" in the town to which it is so taken, within the meaning of the St. of 1867, *c.* 130, §§ 1, 5.

COMPLAINT, under the St. of 1867, *c.* 130, § 5, alleging that the defendant, on August 16, 1880, " did keep and maintain a certain female dog, without said dog being then and there registered and licensed according to law, said dog being then and there a dog more than three months old." Trial in the Superior Court, before. *Gardner*, J., who allowed a bill of exceptions, in substance as follows:

The complainant, a constable of Winthrop, testified that the defendant came to Winthrop some time in June 1880, and, in August 1880, was notified by the witness that he must have his dog registered in Winthrop; that the defendant answered that his dog was licensed and registered in Boston, and that was all the law required him to do. The town clerk of Winthrop produced the records of the town, and no license or register of any license for the dog belonging to or kept by the defendant appeared upon the records.

The defendant testified that he was a resident of Boston, and had been for fifteen years, and lived at No. 7 Bulfinch Place; that he went to the police station in May 1880, and had a dog, that he kept at his house, registered, numbered, described and licensed; that he paid therefor the sum of five dollars, and received the license. The license was put in evidence, and was admitted to be duly issued for the year from May 1880 to May 1881. The defendant further testified that he placed a collar upon the dog, and produced it, having inscribed upon it the number of the license, the name of the defendant and his place of residence, the number, description and residence being the same as stated in the license; that he went to Winthrop about June 1, 1880, intending to remain temporarily, for rest and recreation, and took the dog with him, leaving his home in Boston ready for his occupancy upon his return; that he took a room and engaged board at a hotel, but for no fixed time; that he had no fixed time determined upon for remaining in Winthrop, but stayed longer than he had any expectation of, and until about October 1, 1880; that the dog remained there, and was brought home to Boston when he came back; that, during the time he was there, he came to Boston every day to his business; and that he did not cause his license to be recorded by the clerk of the town of Winthrop.

The defendant asked the judge to instruct the jury, that if, upon the evidence, they were satisfied that the defendant was a resident of Boston, and went to Winthrop intending to remain temporarily for rest and recreation, and with no fixed time for remaining, taking with him his dog, duly registered and licensed in Boston, he would be protected from fine or forfeiture under the statute.

The judge refused to instruct the jury as requested, and ruled that a person whose dog was duly licensed in any town or city in the Commonwealth could take his dog into any other city or town in the Commonwealth for temporary purposes, such as for hunting, or to accompany him in travelling from town to town, without having his license recorded in such other town or city ; but if such person kept his dog for any substantial length of time in a city or town other than that in which the license was granted, then the license must be recorded by the clerk of such city or town; that if the defendant, having his dog duly licensed in Boston, removed from Boston to Winthrop about June 1, 1880, and there boarded until October 1, and during that time kept his dog there, and did not have his license recorded by the clerk of the town of Winthrop, then the jury would be justified in finding that the dog was kept by the defendant in Winthrop without authority of law; and that, under the statute, the defendant would be liable.

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*C. W. Bartlett,* for the defendant.

*G. Marston,* Attorney General, for the Commonwealth.

FIELD, J.  There was evidence that the defendant was a resident of Boston, and had caused his dog to be registered, numbered, described and licensed in Boston for one year from May 1, 1880, and had caused it to wear around its neck a collar distinctly marked with its owner's name and its registered number; and that a license had been duly issued to him by the chief of police of said city.  Sts. 1867, *c.* 130, §§ 1, 3 ; 1871, *c.* 41.

The defendant went to Winthrop about June 1, 1880, for rest and recreation, and took his dog with him, and he remained there, coming however every day to Boston to his business, until about October 1, 1880, when he returned to Boston. While the defendant was living in Winthrop the dog remained there, and the license issued in Boston was not presented for record to the clerk of the town of Winthrop, and was not recorded by him.

The St. of 1864, *c.* 299, § 5, in its last clause, provided that " a license from the clerk of any city or town shall be valid in any part of the Commonwealth, and may be transferred with

the dog licensed: provided, said license be recorded by the clerk of the city or town where the owner or keeper of such dog resides." The St. of 1867, c. 130, § 5, in its last clause, provided that "a license from the clerk of any city or town shall be valid in any part of the Commonwealth and may be transferred with the dog licensed: provided, said license be recorded by the clerk of the city or town where such dog is kept." This last provision, except that, by the St. of 1871, c. 41, in Boston, the chief of police was required to perform the duties theretofore imposed upon the clerk, remained unchanged until the enactment of the Pub. Sts. c. 102, § 86, which provide that "a license duly recorded shall be valid in any part of the Commonwealth, and may be transferred with the dog licensed," but the proviso is omitted, as it was omitted in the report of the commissioners on the revision of the statutes. The decision of this case is not affected by the Public Statutes. See c. 223, § 5.

By the statutes in force when the acts complained of were committed, the owner or keeper was required to obtain a license to keep a dog from an officer of the city or town where the dog was kept, and this license, if recorded in the city or town where it was issued, was valid for one year from May 1, in any part of the Commonwealth, and might be transferred with the dog licensed, provided it " be recorded by the clerk of said city or town where such dog is kept." This proviso must mean that the license originally granted and recorded might be transferred with the dog licensed, provided it were again recorded by the clerk of the city or town where, after such transfer, the dog was kept. In this case there was no transfer of the ownership from one person to another, or of the custody or keeping of the dog from one person to another; but, if the acts of the defendant constituted a keeping of the dog in Winthrop, there was a transfer of the keeping of the dog from Boston to Winthrop. The questions to be decided are, first, whether a transfer of the keeping of a dog from one city or town to another renders it necessary that the license be recorded in the city or town where, after such transfer, the dog is kept; and secondly, whether the evidence warranted the jury in finding that the defendant kept the dog in Winthrop. We think both questions must be answered in the affirmative.

The St. of 1864, *c.* 299, § 1, required the owner or keeper of a dog to cause it to be registered, &c., "in the office of the clerk of the city or town wherein he resides." See Gen. Sts. *c.* 88, § 52; Sts. 1859, *c.* 225, § 1; 1858, *c.* 139, § 1. The St. of 1867, *c.* 130, § 1, required the owner or keeper of a dog to cause it to be registered, &c., "in the office of the clerk of the city or town wherein said dog is kept." Since the passage of this statute, it is the place where the dog is kept, and not the place of residence of the owner or keeper, that determines the town or city where the dog must be registered and licensed. The proviso to the last clause of the St. of 1864, *c.* 299, § 5, that, in case of a transfer of the license with the dog, the license should "be recorded by the clerk of the city or town where the owner or keeper of such dog resides," was adapted to the provisions of that statute, and contemplated the transfer of the dog to another owner or keeper. That statute intended that there should be a record in the city or town where the owner resided. The change made in this proviso, as it is found in the last clause of the St. of 1867, *c.* 130, § 5, became necessary by reason of the change in the law which required the license to be recorded in the city or town where the dog was kept, instead of in the city or town where the owner or keeper resided. The transfer contemplated by the last clause of the St. of 1867, *c.* 130, § 5, was a transfer of the place of keeping the dog from one city or town to another.

There are other provisions of this statute indicating that it was the intention that there should be a record in each city or town of all dogs duly licensed and kept therein. By § 6, the assessors are required to take a list of all dogs owned or kept in their respective cities or towns on the first day of May, with the owners' or keepers' names, and to make returns thereof to the city or town clerk; and by § 7, the mayor of cities and the chairman of the selectmen of towns are required to issue a warrant to one or more police officers or constables, directing them to proceed forthwith either to kill or to cause to be killed all dogs within their respective cities or towns not licensed or collared according to the provisions of the act, and to enter complaint against the owner or keeper thereof. These provisions and others show that it was intended that there should

be a record in each city or town of all dogs lawfully kept therein, in order that the authorities might have the means of ascertaining the persons who were to be held responsible for the damages done by such dogs, and the dogs which it was their duty to cause to be killed.

The Legislature intended that only one license for each year should be required, but that the license should be recorded in each of the different cities and towns where during that year the dog was kept.

In considering what constitutes the keeping of a dog within a city or town, it is perhaps unnecessary to attempt to make an elaborate statement, which shall be applicable to all cases that may arise. The evidence in this case was not sufficient to warrant the jury in finding that the defendant had changed his domicil or residence to Winthrop. For many purposes, courts hold that a person must have a domicil somewhere, and cannot be permitted to escape the responsibilities of a domiciled person by frequent migrations, and that therefore a domicil once found to exist must be presumed to continue until a new one is acquired. The incidents of domicil, which often involve the liability to taxation, the right to vote, the legal settlement of the person, his status and capacity to make contracts or a testament, the law of the distribution of his personal estate, and the jurisdiction of courts, are matters of the gravest importance, and require that both the intention and the act of permanently changing the abode should be shown before a new domicil is established. No such incidents attach to the keeping of a dog. A dog is dangerous where he is, or where he is kept, and not in some other place where his owner or keeper may have his legal residence. If the owner of a dog takes it with him to a place which is his home for the time being, where he lives while engaged in the ordinary prosecution of his business, which is not merely a temporary place of stopping when hunting or travelling, we think he may be said to keep his dog there.

In the opinion of a majority of the court, the instructions given were substantially correct, and the

*Exceptions are overruled.*